UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 24-194** |
| **FAUSTIN WILLIAMS** | **SECTION I** |

## ORDER AND REASONS

Before the Court is defendant Faustin Williams's ("Williams") first objection[1] to the Presentence Investigative Report ("PSR").[2] The government filed a response[3] in opposition. For the reasons that follow, the Court **OVERRULES** the objection.

### I.   BACKGROUND

On November 20, 2024, Williams pleaded guilty to counts one and two of a two-count bill of information. Count one charged Williams with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Count two charged Williams with possessing firearms as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

The PSR recommends a "Chapter Four Enhancement" pursuant to U.S.S.G. § 4B1.1 ("career offender enhancement").[4] The PSR states that the enhancement is predicated on two prior state-level convictions for possession with intent to distribute

---

[1] R. Doc. No. 57.
[2] For the reasons stated *infra* notes 5 and 6 and the accompanying text, and note 12, the Court need not address Williams's first objection to the extent it concerns his 2007 conviction, nor his second objection, as they were resolved in the final Presentence Report or are otherwise moot.
[3] R. Doc. No. 59.
[4] R. Doc. No. 69, at 8.

1

cocaine, in violation of La. Rev. Stat. § 40:967, occurring on August 5, 2011 and May 14, 2019.[5] The PSR also states that in 2007, Williams was convicted of attempted possession with intent to distribute cocaine, but because the sentence for that conviction was imposed more than fifteen years prior to the instant offense, pursuant to § 4A1.2(e)(1), it was not considered when computing Williams's criminal history.[6]

With the career offender enhancement, and a three-point reduction for acceptance of responsibility, Williams's offense level is 29 and his criminal history category is VI.[7] This results in a guideline range of 151 to 188 months as to count one and 151 to 180 months as to count two.[8] Without the career offender enhancement, Williams would have an offense level of 25, a criminal history category of IV,[9] and each count would carry a guideline range of 84 to 105 months. *See* U.S.S.G. § 5A.

Williams objects to his § 4B1.1 career offender enhancement, arguing that his 2011 cocaine conviction in Louisiana no longer qualifies as a "controlled substance offense" pursuant to § 4B1.2 because a 2015 change to the federal regulatory drug Schedule II, outlining the cocaine-related substances criminalized pursuant to the Controlled Substances Act ("CSA"), explicitly excluded the cocaine derivative [$^{123}$I]Ioflupane ("Ioflupane").[10] Williams contends that when applying the "categorical

---

[5] *Id.* at 8, 42, 45.
[6] *Id.* at 10, 27.
[7] *Id.* at 8.
[8] R. Doc. No. 68.
[9] Without the enhancement for § 4B1.1, Williams's eight criminal history points, R. Doc. No. 69, at 8–13, result in a criminal history category of IV. *See* U.S.S.G. § 5A.
[10] R. Doc. No. 57, at 1–2. *See also* Schedules of Controlled Substances: Removal of [123I]Ioflupane From Schedule II of the Controlled Substances Act, 80 Fed. Reg.

2

approach" to his 2011 conviction, the applicable Louisiana definition of cocaine-related substances, La. Rev. Stat. § 40:964, Schedule IIA(4) (effective Aug. 15, 2010) ("Louisiana Schedule II (2010)"), is broader than the current sentencing guideline definition, 21 C.F.R. § 1308.12(b)(4) (effective Dec. 21, 2022) ("federal Schedule II"), because the federal Schedule II explicitly excludes Ioflupane.[11] In short, Williams's argument is that because Louisiana Schedule II (2010) criminalized a broader swath of conduct than the current federal Schedule II, his 2011 conviction should not count towards his career offender status, and therefore he does not qualify for a § 4B1.1 career offender enhancement.[12]

---

54717 (citing the Drug Enforcement Administration's drug scheduling authority, as delegated by the Attorney General pursuant to 21 U.S.C. § 811).

[11] *See id. Compare* La. Rev. Stat. § 40:964, Schedule IIA(4) (effective Aug. 15, 2010) ("Coca leaves, cocaine, ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation of coca leaves, cocaine or ecgonine and any salt, isomer, salt of an isomer, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine."), *with* 21 C.F.R. § 1308.12(b)(4) ("Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, *except that the substances shall not include …ioflupane.*" (emphasis added)).

[12] R. Doc. No. 57, at 1–2. Williams also objects to the inclusion of his 2007 conviction as a "prior sentence" for the same reasons as his 2011 conviction. *See* R. Doc. No. 57, at 1. The PSR already resolves this objection on other grounds, *see* R. Doc. No. 69, at 27, and this Court agrees with the probation officer's finding that the 2007 offense is time-barred from qualifying as a "prior sentence" for purposes of a career offender enhancement. *See* U.S.S.G. § 4A1.2(e)(1)(counting as a prior sentence "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense [and] . . . any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period."). Williams was paroled on November 21, 2007, for

The government disagrees with Williams and argues that his 2011 conviction qualifies as a controlled substance offense pursuant to § 4B1.2. The government asserts that Williams must show a "realistic probability" that Louisiana would have prosecuted offenses involving Ioflupane before this Court can find that Williams's 2011 conviction does not qualify as a controlled substance offense.[13] The government states that because Williams has not provided this Court with any examples of Louisiana prosecuting offenses involving Ioflupane, he has therefore failed to satisfy the "realistic probability test."[14]

## II. LAW & ANALYSIS

To qualify as a career offender pursuant to U.S.S.G. § 4B1.1, among other requirements not at issue here, Williams must have "two prior felony convictions of either a crime of violence or a controlled substance offense." *Id.* at § 4B1.1(a)(3). A predicate controlled substance offense may not criminalize conduct broader than the sentencing guidelines allow at sentencing for the present offense. *United States v. Minor*, 121 F.4th 1085, 1089 (5th Cir. 2024). For the reasons stated below, Williams

---

his 2007 conviction. R. Doc. No. 69, at 10. The present offense commenced on or about June 5, 2024, *id.* at 5, more than fifteen years from the date he was released from incarceration for his 2007 conviction.

Similarly, this Court need not reach Williams's second objection to counting his two 2019 cocaine offenses as two separate prior sentences. R. Doc. No. 57, at 3. The PSR also resolved this objection in favor of Williams, with a recommendation to treat the two offenses as just one sentence. R. Doc. No. 69, at 27. Regardless, whether the 2019 offenses count as either one or two sentences does not matter. Williams has the two required sentences in either case because this Court finds that his 2011 conviction qualifies for purposes of the career offender enhancement. *See infra* p. 10.
[13] R. Doc. No. 59, 5–6.
[14] *Id.*

failed to show a realistic probability that Louisiana would have prosecuted offenses involving Ioflupane, conduct he argues that Louisiana Schedule II (2010) criminalized more broadly than the present sentencing guidelines.

### *a. Application of the "Categorical Approach"*

The federal sentencing guidelines do not explicitly define "controlled substances." As a result, courts look to the CSA definition in use at the time of sentencing for the present offense.[15] *Minor*, 121 F.4th at 1093. Therefore, only drugs listed on the federal drug schedule at the time of sentencing qualify as "controlled substances." *Id.*

To determine whether the prior drug conviction falls within the sentencing guidelines' definition of a controlled substance offense, courts employ a "categorical approach." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). The "categorical approach" "focus[es] solely on whether the elements of the [prior conviction] sufficiently match the elements of [the] generic [offense]," and ignores the facts of the underlying offensive conduct. *Mathis v. United States*, 579 U.S. 500, 504 (2016). "[A] prior conviction cannot serve as a predicate offense" for purposes of a § 4B1.1 enhancement if it "criminalizes a greater swath of conduct than the elements of the relevant Guidelines offense." *Minor*, 121 F.4th at 1089 (citations omitted) (cleaned up).

---

[15] This approach differs from the analysis courts use when considering prior convictions for purposes of similar enhancements under the Armed Career Criminal Act ("ACCA"). *See United States v. Keys*, No. 24-137, 2025 WL 1555352, at *3 (E.D. La. June 2, 2025) (Africk, J) (citing *Minor*, 121 F.4th at 1092–93) ("[K]ey differences between ACCA and the Guidelines require[ ] courts to apply different relevant time periods for each: at the time of sentencing for purposes of the Guidelines and at the time of the offense for purposes of ACCA.").

5

When considering a § 4B1.1 enhancement, the CSA and federal drug schedule at the time of sentencing provide the "generic" definition of the offense, *see United States v. Frierson*, 981 F.3d 314, 316 (5th Cir. 2020), while the criminal statute in effect at the time of the prior offense provides the elements of the prior conviction, *see Minor*, 121 F.4th at 1089. The relevant analysis here is whether the list of cocaine-related substances in Louisiana Schedule II (2010) matches the cocaine-related substances listed in the current federal Schedule II. *See Minor*, 121 F.4th at 1093 (explaining that courts should look to the drugs listed on the federal drug schedule at the time of sentencing); *Frierson*, 981 F.3d at 317–18 (explaining courts should read the Louisiana drug distribution offenses in conjunction with the state drug schedule, from the time of the prior conviction). Here, the state statute is facially broader than its generic counterpart. Whereas the federal Schedule II criminalizes cocaine-related substances "except . . . [I]oflupane," Louisiana Schedule II (2010) included no such exception. *See supra* note 11.

### b. *Applicability of the "Reasonable Probability Test"*

Although Louisiana Schedule II (2010) is broader on its face than the generic federal counterpart, this Court still must consider whether Williams established a realistic probability that Louisiana would have enforced La. Rev. Stat. § 40:967 with respect to Ioflupane. *See United States v. Edmond,* No. 24-30255, 2025 WL 2017287, at 2* (5th Cir. July 18, 2025).

Williams has not challenged the government's assertion that the realistic probability test applies to his 2011 conviction. Nevertheless, this Court recognizes

6

that, prior to *Edmond*, there was a split in this district on the applicability of the realistic probability test to § 4B1.1 career offender enhancements, where the defendant challenges whether a state conviction qualifies as a controlled substance offense pursuant to § 4B1.2, and the state statutory definition of the drug offense is facially broader than the generic definition. *Compare United States v. Steele*, No. 22-195, 2024 WL 1877072, at *4–5 (E.D. La. Apr. 23, 2024) (Morgan, J.) (finding the realistic probability test's burden shift from the government to the defendant inapplicable where the "plain language" of the state statute is broader than the generic offense); *and United States v. Keelen*, No. 24-38, 2025 WL 326509, at *4–6 (E.D. La. Jan. 29, 2025) (Fallon, J.) (finding that the realistic probability test is inapplicable where a state statute is explicitly broader than the generic offense); *with United States v. Verdin*, No. 22-29, 2025 WL 1380697, at *3–4 (E.D. La. May 13, 2025) (Vance, J.) (holding that Fifth Circuit precedent regarding the categorical approach is clear and requires district courts to apply the realistic probability test for state convictions, even where the state statute is facially broader than its federal counterpart).

This Court agrees with the finding in *Verdin* that, "the Fifth Circuit has not wavered in its application of the realistic probability test in the context of state convictions . . . the Fifth Circuit [directs] that the realistic probability test [is] applicable [where] the case involve[s] 'a state statute and a federal statute.'" *Verdin*, 2025 WL 1380697, at *3 (first citing *United States v. Kerstetter*, 82 F.4th 437, 441 (5th Cir. 2023), *vacated on other grounds*, 145 S. Ct. 121 (2024); and then quoting *United*

7

*States v. Kerstetter*, No. 22-10253, 2025 WL 1079071, at *4 (5th Cir. Apr. 10, 2025) ("*Kerstetter II*")).

Further, since *Steele*, *Keelen*, and *Verdin* were decided, the Fifth Circuit has resolved the split. When considering whether a Louisiana conviction qualified as a controlled substance offense for purposes of a § 4B1.1 career offender enhancement, the Fifth Circuit explained in *Edmond* that the realistic probability test applies, even where the state drug schedule is facially broader than its federal counterpart. *See Edmond*, 2025 WL 2017287, at *2–3 ("When the prior convictions are state offenses, there is an additional wrinkle. We apply the 'realistic probability test.'" (citations omitted)). The Fifth Circuit also recently issued an opinion specifically applying the realistic probability test to a defendant's prior § 40:967 cocaine conviction for purposes of assessing whether a career offender enhancement was appropriate. *See United States v. Gladney*, No. 22 -214, at 2 (5th Cir. Jan. 8, 2026). In denying the defendant's argument, the court found that the defendant had "not shown a realistic probability that Louisiana would prosecute someone for distributing Ioflupane or established that he is not required to make that showing." *Id*. Given the weight of authority from the Fifth Circuit, the Court is persuaded that it must apply the realistic probability test to Williams's objection.

      ***c.     Application of the "Realistic Probability Test"***

To satisfy the realistic probability test, Williams must establish, either through his own case or others, "a realistic probability, not a theoretical possibility" that Louisiana would have applied "its statute to conduct that falls outside the

8

generic definition of the crime." *Castillo-Rivera*, 853 F.3d at 222 (5th Cir. 2017) (citation omitted); *see also Minor*, 121 F.4th at 1093 n.9.

In both *Verdin* and *Edmond*, the defendants were readily able to provide specific prior examples of Louisiana actually prosecuting offenses involving the marijuana-related substance (hemp) and synthetic cannabinoids that the generic federal offense did not criminalize. *See Verdin*, 2025 WL 1380697, at *4; *Edmond*, 2025 WL 2017287, at *4.[16] Williams has not provided this Court with any examples of Louisiana prosecuting cases involving Ioflupane, nor has he alleged he was convicted of such an offense.

Furthermore, in *Brown v. United States*, 602 U.S. 101, 109–110 (2024), the Supreme Court found it "highly unlikely that any [cocaine convictions] were based on the possession or sale of the Parkinson's drug [Ioflupane]" because the cocaine derivative "is radioactive," "produced only through a 'highly technical and complex synthetic route,'" "can be stored for no more than 24 hours," "anyone attempting to become intoxicated by using the drug would need to inject . . . '15 liters of fluid, a volume likely to cause death if administered intravenously,'" and "the Federal Government has identified 'no case reports' involving individuals who misused that drug." *Id*. (citing Dept. of Just., Drug Enf't Admin., Off. of Diversion Control, Schedule

---

[16] Although *Steele*, 2024 WL 1877072, at *4–5, and *Keelen*, 2025 WL 326509, at *3, take issue with the realistic probability test's burden shifting to criminal defendants, based on the success of the defendants in *Verdin* and *Edmond*, it is clear that the test is not an insurmountable standard.

9

of Controlled Substances: Removal of [$^{123}$I]Ioflupane From Schedule II of the Controlled Substances Act, at 2, 5–6 (2015)).

As such, Williams has not met his burden under the realistic probability test to establish that Louisiana would have applied Louisiana Schedule II (2010) to an offense involving Ioflupane.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that defendant's first objection to the Presentence Investigation Report, regarding his career offender status pursuant to § 4B1.1, is **OVERRULED**.

New Orleans, Louisiana, February 4, 2026.

                                                              _____
                                                                       **LANCE M. AFRICK**
                                                              **UNITED STATES DISTRICT JUDGE**